UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 12-22578-CIV-MORENO

AUBREY DAVIS a/k/a DJ MIXX,

    Plaintiff,

vs.

USHER TERRY RAYMOND a/k/a USHER, SONY MUSIC ENTERTAINMENT, RICHARD PRESTON BUTLER a/k/a RICO LOVE, ANDREW HARR a/k/a DRU BRETT, JERMAINE JACKSON a/k/a MAYNE ZAYNE, ALGERNOD LANIER WASHINGTON a/k/a PLIES, EMI APRIL MUSIC, INC., NOTTING DALE SONGS, INC., TRAC-N-FIELD ENTERTAINMENT, LLC, and UR-IV MUSIC, INC.,

    Defendants.
_____/

## ORDER GRANTING MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) **(D.E. No. 18)**, filed on **October 11, 2012**. Plaintiff Aubrey Davis filed this suit against Defendants, alleging copyright infringement under the federal Copyright Act in Count I as well as misappropriation under Florida law in Count II. In addition, Davis requests an accounting under state law in Count III. Defendants jointly filed a motion to dismiss all three counts, arguing that Plaintiff had failed to state a claim for copyright infringement in Count I and that federal law preempted the state law claims in Counts II and III. For the following reasons, this Court agrees with Defendants and grants their motion to dismiss without prejudice and with leave for Davis to file an amended complaint no later than **December 21, 2012**.

## I. FACTUAL BACKGROUND

Plaintiff Davis, also known as DJ Mixx, is a local music producer, sound engineer, and disc jockey. In 2008, Davis composed, produced, and created a musical arrangement entitled "Let's Go." He subsequently made a sound recording of this arrangement, later registering it with the United States Copyright Office on October 1, 2009.

Davis thereafter began working with local songwriters to add lyrics to "Let's Go." He now alleges that, "[u]pon information or belief, one of the . . . songwriters or artists, without authorization, delivered or caused to have delivered" the work to Defendants, including Usher Terry Raymond ("Usher") or one of his agents. Compl. ¶ 30. Despite the lack of any agreement or negotiation relating to the use of the song, Davis claims that Defendants integrated his work directly into Usher's song "Hey Daddy (Daddy's Home)." In particular, he asserts that Usher copied "Let's Go" by recording vocals on top of the song to create the derivative work. Though he admits that Defendants "attempted to hide their obvious use of ["Let's Go"] . . . by making minor changes," he states that the "harmonic progression of the [two works] . . . are [sic] identical." *Id.* ¶ 38.

Defendants Usher, Richard Preston Butler, Andrew Harr, and Jermaine Jackson now claim authorship of "Hey Daddy (Daddy's Home)." On December 8, 2009, the song was released as a single as part of Usher's album "Raymond v. Raymond," eventually reaching number twenty-four on the Billboard Hot 100 chart and number two on the Hot R&B/Hip-Hop Songs chart.

Davis now brings this suit, asserting three counts against Defendants for the unauthorized use of "Let's Go." Count I accuses Defendants of copyright infringement in violation of the

federal Copyright Act. Specifically, Davis alleges that Defendants have violated his copyright for their own financial gain by copying, publishing, and distributing "Hey Daddy (Daddy's Home)." Davis therefore requests an injunction prohibiting further infringement by Defendants, destruction of all copies violating his exclusive rights, and damages including all profits reaped by Defendants as a result of their infringement. In the alternative, Count II states a claim for misappropriation of property under Florida law premised on Defendants' reproduction, distribution, and sale of the infringing work. Finally, Count III seeks an accounting for all profits received in connection with the marketing, distribution, and sale of "Hey Daddy (Daddy's Home)."

Defendants have collectively filed a motion to dismiss all three counts. They argue first that Davis has failed to state a claim for copyright infringement under Federal Rule of Civil Procedure 12(b)(6). Second, they contend that the claims in Count II and III are preempted by the Copyright Act. Last, Defendants assert that Davis has failed to state a claim for accounting in Count III under Florida law.

## II. LEGAL STANDARD

Under Rule 8, a plaintiff must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When ruling on a motion to dismiss under Rule 12(b)(6), a court must view the complaint in the light most favorable to the plaintiff and assume the veracity of well-pleaded factual allegations. *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). However, this tenet does not apply to legal conclusions, and such conclusions "must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Though a proper

-3-

complaint "does not need detailed factual allegations," it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). At a minimum, a plaintiff must present "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In other words, the complaint must contain "enough fact to raise a reasonable expectation that discovery will reveal evidence" of the required element. *Twombly*, 550 U.S. at 556.

### III. DISCUSSION

*A. Count I*

In Count I, Davis alleges that Defendants committed copyright infringement through the copying, publishing, and distribution of his song "Let's Go" via Usher's work "Hey Daddy (Daddy's Home)." He claims that Defendants gained access to his song when one of the songwriters with whom he initially worked "without authorization . . . delivered or caused to have delivered" the work to them. Compl. ¶ 30. Davis additionally contends that, though the two works contain "minor" distinctions, their harmonic progressions are "identical." *Id.* ¶ 38.

To establish a copyright infringement claim, a plaintiff must demonstrate "(1) a valid copyright in the composition, and (2) that the defendant has copied protectible elements of the plaintiff's composition." *Lassin v. Island Def Jam Music Grp.*, No. 04-22320-CIV-HUCK/SIMONTON, 2005 U.S. Dist. LEXIS 43862, at *9–10 (S.D. Fla. Aug. 8, 2005). A

plaintiff may demonstrate the copying element by introducing evidence of one of the following: (1) that the defendant actually copied the original work; (2) that the defendant had access to the original work and "substantial similarities exist between the two [works] such that an average lay observer would recognize [the alleged infringing work] as having been appropriated from the [original work]"; or (3) that "the disputed works are so 'strikingly similar' that there is no possible explanation for the alleged similarities other than copying." *Id.* at *10.

In the present case, the parties do not dispute that Davis holds a valid copyright in his song "Let's Go." Nor does Davis attempt to establish copying by asserting direct evidence of actual copying. Instead, Defendants contest Davis's ability to assert sufficient allegations of either of the latter two prongs of the copying analysis, namely access or striking similarity.

i. Access

A plaintiff may show that a defendant had access to a work by "demonstrating either that the infringed work has been widely disseminated so that it is reasonable to infer that the defendant heard or saw the infringed work, or that it is reasonable to infer from a particular chain of events that the defendant gained access to the copyrighted work." *Id.* at *15–16. In addition, a court may infer access "if the author sent the copyrighted work to a third party intermediary who has a close relationship with the infringer." *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1250 (11th Cir. 1999) (quoting *Towler v. Sayles*, 76 F.3d 579, 582 (11th Cir. 1996)). Though access includes reasonable opportunities to view the copyrighted work, access "may not be inferred through mere speculation or conjecture." *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1250 (11th Cir. 1999). In sum, there must be more than a "bare possibility" that the defendant viewed the work. *See id.*

In challenging the complaint, Defendants stress that Davis's allegations of access boil down to a single, nebulous claim that an unidentified songwriter delivered the work to Defendants. They argue that this unsubstantiated assertion supports neither a showing of wide dissemination nor a chain of events necessary to allege access. In response, Davis affirms the sufficiency of the allegations contained in his complaint.

Since Davis fails to allege anything more than a bare possibility of Defendants' access to his work, the Court finds that the complaint lacks adequate factual support for a claim of copying through access. Davis never asserts that he disseminated his work in a widespread manner. Rather, he states that he shared the song only with local songwriters in an effort to add lyrics to the sound recording. *See* Compl. ¶ 29. Indeed, his only attempt to establish access is his claim that, "[u]pon information or belief, one of the aforementioned songwriters or artists, without authorization, delivered or caused to have delivered" the song to Defendants. *Id.* ¶ 30. This statement likewise falls short of demonstrating a chain of events that would allow the Court to infer access. Davis does not identify which songwriter or artist delivered the work, nor does he specify which of Defendants received it. In fact, there are no details whatsoever describing when, where, and how the delivery occurred, or the nature of the relationship, if any, between the delivering songwriter and the receiving Defendant. At this time, Davis's complaint is nothing more than "mere speculation [and] conjecture" regarding Defendants' access. *See Herzog*, 193 F.3d at 1250.

ii. Striking Similarity

As a substitute for access, a plaintiff may demonstrate copying by presenting evidence of striking similarity between the original work and the alleged infringing work. *See Robbins v.*

*Raymond*, No. CV411-193, 2012 U.S. Dist. LEXIS 82150, at *4 (S.D. Ga. June 13. 2012). Striking similarity exists where "the proof of similarity in appearance is 'so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded.'" *Corwin v. Walt Disney World Co.*, 475 F.3d 1239, 1253 (11th Cir. 2007) (quoting *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir. 1984)).

Defendants similarly challenge the sufficiency of Davis's allegations regarding the similarity between "Let's Go" and "Hey Daddy (Daddy's Home)." In particular, they highlight Davis's concessions that Usher's work contains slight differences from his own. *See* Compl. ¶¶ 4, 38. They further insist that Davis's statement that the harmonic progressions of the two songs are "identical" is insufficient to allege striking similarity. Davis again answers these attacks by defending the adequacy of his complaint in its current state, maintaining that his assertion of identical harmonic progressions is enough to plead striking similarity.

The Court likewise determines that Davis's complaint as pled fails to adequately allege striking similarity between the two works. Beyond conclusory statements that Defendants "copied" and "commandeered" Davis's work, *see* Compl. ¶¶ 6, 31, 33, 56, Davis's complaint hinges on his allegation that the harmonic progressions are "identical." *Id.* ¶ 38. In fact, Davis admits that discrepancies exist between the two songs, describing the incorporation of his work into Usher's song as "slightly altered" and with "minor changes." *See id.* ¶¶ 4, 38. Furthermore, as federal courts have noted, harmonic progressions often lack the originality necessary to be copyrightable without an additional showing of uniqueness. *See, e.g., Johnson v. Gordon*, 409 F.3d 12, 23–24 (1st Cir. 2005) (recognizing that there may be "some circumstances in which a common harmonic progression could be exploited in an original (and, thus, protectable)

manner"). Thus, without more, any assertion of striking similarity remains speculative at this time. Consequently, the Court dismisses Count I of Davis's complaint for failure to state a claim.

## B. Count II

As an alternative to copyright infringement, Davis raises a claim of misappropriation under Florida law in Count II. In doing so, he reiterates the allegations made in Count I that Defendants reproduced, distributed, sold, and exploited his song for financial gain. *See* Compl. ¶ 67. Defendants object to this claim, arguing that it is preempted by the Copyright Act.

Pursuant to 17 U.S.C. § 301(a), the Copyright Act preempts state law claims that are "equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103." 17 U.S.C. § 301(a) (2012). In applying this provision to determine if federal law preempts a state law claim, courts in the Eleventh Circuit utilize a two-part test. First, the court must decide "whether the rights at issue fall within the 'subject matter of copyright' set forth in sections 102 and 103." *Dunlap v. G&L Holding Grp. Inc.*, 381 F.3d 1285, 1293 (11th Cir. 2004) (quoting *Crow v. Wainwright*, 720 F.2d 1224, 1225–26 (11th Cir. 1983)). Second, the court must determine "whether the rights at issue are 'equivalent to' the exclusive rights of section 106." *Id.* at 1294 (quoting *Crow*, 720 F.2d at 1226).

In their motion to dismiss, Defendants assert that Count II satisfies both prongs of this preemption inquiry. First, they note that § 102 of the Act covers both musical works and sound recordings. 17 U.S.C. § 102(a)(2), (7). Second, they maintain that the rights that Davis seeks to

protect are equivalent to those enumerated in § 106, namely the rights of reproduction, preparation of derivative works, distribution to the public, public display, and public performance. *See id.* § 106(1)–(6). Davis responds by citing his ability to plead alternative theories of liability under Rule 8(d) regardless of consistency. Additionally, he relies on case law where claims of misappropriation of a non-copyrightable idea survived preemption challenges.

Because Davis's misappropriation claim is premised on the alleged unauthorized copying, publishing, and distribution of "Let's Go," the Court finds that the claim is preempted by the Copyright Act. At the outset, the fact that the claim was pled in the alternative has no bearing on whether it is preempted. Federal courts have held state law claims to be preempted by federal copyright law despite being pled in the alternative. *See, e.g.*, *WNET v. Aereo, Inc.*, No. 12 Civ. 1543 (AJN), 2012 U.S. Dist. LEXIS 70749, at *34 (S.D.N.Y. May 21, 2012) (concluding that an unfair competition state law claim pled in the alternative to copyright infringement was preempted by the Copyright Act).

As for the claim itself, the allegations contained therein fit squarely within the preemption analysis. Count II fundamentally accuses Defendants of copying Davis's musical work and distributing it for their financial benefit. Since musical works and sound recordings are explicitly enumerated in § 102, the rights at issue fall within the subject matter covered by federal copyright law. 17 U.S.C. § 102(a)(2), (7). Likewise, the rights that Davis claims Defendants infringed are equivalent to the exclusive rights stated in § 106. Specifically, Davis argues that Defendants, without authorization, "advertised, promoted, reproduced, manufactured, distributed, offered for sale, sold, and/or otherwise exploited" his work by selling copies for financial gain. Compl. ¶ 67. The right to reproduce copyrighted materials, prepare derivative works, and

distribute copies to the public by sale are all rights plainly detailed in the Act. 17 U.S.C. § 106(1)–(3). Nor is there any indication from Count II that Davis alleges misappropriation of a non-copyrightable idea, a claim which may survive preemption. *See Jaggon v. Rebel Rock Entm't*, No. 09-61144-Civ-COOKE/BANDSTRA, 2010 U.S. Dist. LEXIS 90685, at *7–8 (S.D. Fla. Aug. 31, 2010) (holding that a misappropriation claim of an idea for a song was not preempted). Accordingly, because Davis asserts rights in a copyrightable subject matter, his claim in Count II is preempted. .

## C. Count III

Finally, Davis asserts a claim for accounting under Florida law in Count III. In the same manner as Count II, Defendants now contend that the claim is preempted by the Copyright Act.

This Court has spoken specifically on the issue of preemption of state law accounting claims. In *Pena-Rivera v. Editorial America, S.A.*, the Court held that a state law accounting claim pled in addition to a federal copyright infringement claim was preempted using the Eleventh Circuit's two-part inquiry. *See Pena-Rivera v. Editorial America, S.A.*, No. 96-1437-CIV-FERGUSON, 1997 U.S. Dist. 11795, at *4–5 (S.D. Fla. May 5, 1997). Despite the plaintiff's argument that the accounting allegation contained elements additional to copyright infringement, the Court nevertheless found it to be preempted since the accounting claim was "nothing more than [a] reincarnation[] of the copyright claim." *Id.* at *8.

Defendants reapply their Count II preemption reasoning to Count III, maintaining that Davis's accounting claim is rooted in a subject matter covered by the Copyright Act and asserts rights equivalent to those exclusively protected by federal law. Davis himself concedes that the Act provides for an accounting remedy, but insists that the accounting cause of action contains

additional elements distinguishing it from copyright infringement including a showing of complexity and a lack of an adequate remedy at law.

As with Count II, the Court finds that Davis's accounting claim in Count III is preempted. Similar to the claim asserted in *Pena-Rivera*, Davis's request for an accounting is "predicated upon the same conduct as that underlying the copyright count." *Id.* at *8 (quoting *The Balsamo/Olson Grp., Inc. v. Bradley Place Ltd. P'ship*, 950 F. Supp. 896, 899 (C.D. Ill. 1997)). Indeed, Davis seeks an accounting for all net profits received by Defendants in connection with the "creation, marketing, distribution and sale" of the alleged infringing work. Compl. ¶ 72. Where, as here, the alleged copying is the "sole factual claim" for the state law claim, the state claim is preempted by the Act. *See id.* at *5. The Court therefore dismisses Count III.

## IV. CONCLUSION

For the above reasons, it is

**ADJUDGED** that Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) **(D.E. No. 18)**, filed on **October 11, 2012**, is GRANTED without prejudice and with leave for Davis to file an amended complaint. Davis shall file the amended complaint no later than **December 21, 2012**.

DONE AND ORDERED in Chambers at Miami, Florida, this 29 day of November, 2012.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of Record